Filed 5/14/14  P. v. McCarthy CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MIKE McCARTHY III,<br><br>        Defendant and Appellant. | B249122<br><br>(Los Angeles County<br>Super. Ct. No. MA055564) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, James B. Pierce, Judge.  Affirmed.

        Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and James William Bilderback II, Supervising Deputy Attorney General, for Plaintiff and Respondent.

————————————

Appellant Mike McCarthy, III contends the trial court erred in refusing to strike a prior strike conviction. We affirm.

## PROCEDURAL HISTORY

By amended information, appellant was charged with second degree robbery (Pen. Code, § 211;[1] count 1), assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2 & 4) and, assault with a deadly weapon (§ 245, subd. (a)(1); count 3). As to count 1, it was also alleged that the offense was a violent felony within the meaning of section 667.5, subdivision (c), and that appellant personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1), causing the offense to be a serious felony within the meaning of section 1192.7, subdivision (c)(23). As to counts 1 and 3, it was alleged that the offenses were serious felonies within the meaning of section 1192.7, subdivision (c) and that appellant had suffered a prior conviction for a serious felony within the meaning of section 667, subdivision (a)(1). As to all counts the information alleged that appellant had suffered a prior "strike" within the meaning of section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i), and that he suffered three prior convictions within the meaning of section 667.5, subdivision (b).

Appellant pleaded not guilty and denied the special allegations. Following trial, a jury found appellant guilty as to counts 1 and 3. He was found not guilty of assault by means of force likely to produce great bodily injury (counts 2 and 4), but guilty of the lesser included crimes of misdemeanor assault. He waived jury trial on the priors.

Proceedings were suspended pending a mental competency assessment and hearing as to appellant's fitness to stand trial. (§ 1368.) Appellant was found mentally incompetent and the court ordered him placed in a treatment facility. Sentencing proceedings began after appellant was released from the hospital, and he was declared mentally competent.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The trial court found appellant's prior conviction and enhancements true, and sentenced him to state prison for a total of 11 years. The midterm of three years, doubled was imposed as to count 1. The midterm of three years was imposed as to count 3, concurrent with the sentence imposed as to count 1, and six months each as to misdemeanor counts 2 and 4, also concurrent. Appellant received 5 years pursuant to section 667, subdivision (a), but the court exercised its discretion and did not impose sentence on the section 667.5, subdivision (b) enhancements. He was ordered to pay various fines and fees, and awarded 503 days of presentence custody credits.

## FACTUAL BACKGROUND

*Prosecution case*

On February 18, 2012, Home Depot loss prevention officer Scotty Southwell observed appellant in the tools department of a Palmdale store, randomly pulling drill bits and other items from the shelves and putting them in a shopping cart. Suspicious of his behavior, Southwell watched appellant as he left the tools department and went into the lumber department, a secluded area of the store. There, Southwell observed appellant tuck his zippered sweater or jacket into his waistband, put items from the cart inside that garment and head toward the exit, passing the checkout without paying.

As appellant approached the exit, Southwell, dressed in plain clothes, tapped him on the shoulder and identified himself as "Home Depot Security." Appellant pushed Southwell away with both hands. Southwell grabbed appellant in an effort to detain him, and an altercation ensued. Southwell told appellant to "'quit resisting.'" Instead of doing so, appellant withdrew a yellow box cutter or knife from his pocket. He opened the weapon with his mouth and moved towards Southwell, threatening several times "to cut [him]." Southwell believed appellant was serious, and was afraid. He grabbed appellant's hand to control the knife. Appellant bit Southwell's forearm. Southwell struck appellant several times on his arm and chest with a fist to force him to release his bite and grip.

A customer observed appellant brandishing a knife and threatening to cut Southwell with it. The customer, a former wrestler, intervened using a choke hold to try

3

to immobilize appellant. Appellant bit the customer, who removed his arm from appellant's bite and put appellant in a choke hold causing him to lose his breath, but not to loosen his grip on the knife. Another Home Depot employee intervened, stepping on appellant's hand to force him to release the knife. After Southwell handcuffed appellant, merchandise worth $150–$200 was found on his person.

Deputy Sheriff Diane Mekdara responded to the call and spoke with appellant after advising him of his *Miranda*[2] rights. Appellant told Deputy Mekdara he went to Home Depot for a paint quote. When Deputy Mekdara asked appellant about the knife in his possession, he claimed to have no idea what she was talking about. At booking, Deputy Mekdara discovered appellant had no cash or credit cards. He did not respond when she asked if he had a way to pay for the items he took.

*Defense case*

Appellant testified in his own defense. He admitted stealing drill bits and other small items from Home Depot on February 18, 2012. He hid the items in his jacket and cut the "buzzers" off in the lumber area, a hidden, camera-free area of the store. Appellant believed he had walked unnoticed past the registers, and was sure he "got away"; he was not worried that security would stop him. As appellant approached the exit, Southwell, a big "scary Black person" grabbed him. He had no idea who Southwell was. In appellant's experience, a security officer in an area "like Lancaster" was Caucasian, not a "gang-bangish looking guy with tattoos." Southwell was taller and heavier than appellant, who is 5 feet eight and one-half inches tall. Southwell either did not identify himself as a security officer, or appellant did not hear him do so. Appellant would have stopped if Southwell had made such an identification or displayed a badge.

Appellant did not push Southwell. He fought back because he was frightened and unable to breathe after Southwell punched and choked him. Appellant, who has asthma, bit Southwell's and the customer's arms in order to release their holds and regain his

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

4

breath because he was being choked.  During the tussle, appellant threatened several times to cut Southwell with the box-cutter if he did not let him go, in order to protect himself from being hurt.  Appellant fought back because he was attacked, and did not consider disarming or retreating from the struggle.  He recognized that Southwell was a security officer once the struggle was over, and he had been handcuffed.  He never told Southwell or Deputy Mekdara that he did not know Southwell was a security officer.  Appellant admitted lying to Deputy Mekdara when he said he hadn't stolen anything and did not know about the knife.  The yellow box cutter was his.  He typically brought it with him when he stole things and used it to remove security tags.  Appellant had stolen items from the Palmdale Home Depot before, but had never been caught.

Appellant acknowledged a burglary conviction in 1993, and convictions for petty theft with a prior in 1999, and petty theft with a prior in 2003.

## DISCUSSION

Appellant maintains the trial court's refusal to strike a prior strike conviction was an abuse of discretion, because the ruling lacks sufficient evidentiary support and his offense falls outside the spirit of the "Three Strikes" law.  We disagree.

1. *Procedural history*

In a *Romero*[3] motion argued at sentencing, appellant sought dismissal of his prior strike conviction (a 1993 burglary conviction with a firearm).  He argued the prior strike occurred many years earlier, and that he suffered from mental illness and had been a drug addict most of his life.  He maintained that most of the crimes he committed in the years since that strike offense were due to his drug addiction and that, with the exception of the instant offense, none of the victims were hurt.  In response, the prosecutor maintained that appellant continued to pose a threat to the community.  Although the prior strike was committed 20 years earlier, that offense had been a residential burglary with a weapon,

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

and appellant had two more priors since and had served prison time within the past five or 10 years.

Appellant's lengthy criminal history dates back to a juvenile drug conviction in 1987 (Health & Saf. Code, § 11360), for which he served time in the CYA. That was followed by the 1993 felony residential burglary adult conviction for which he served two years in state prison, and a conviction in 1996 for attempted possession of narcotics (§ 664; Health & Saf. Code, § 11350, subd. (a)), a felony, for which he received 36 months formal probation. A petty theft conviction with a prior in 1999 (§ 666), constituted a parole violation, which terminated probation, and appellant was sentenced to three years in state prison. In 2002, appellant was convicted of reckless driving and driving with a suspended license (Veh. Code, §§ 23103, subd. (a) & 14601.1, subd. (a)), and served jail time. In 2003, appellant was convicted of petty theft with a prior (§ 666), a felony, and battery (§§ 242, 243, subd. (a)), a misdemeanor, and was sentenced to two years in state prison. Appellant had five misdemeanor convictions for driving with a suspended license, which he received in 2006, 2010 and 2011 (Veh. Code, § 14601.1, subd. (a)), and committed parole violations every year from 2007 to 2010 (§ 3056).

The probation report recommended that appellant be denied probation, if convicted of the charged offenses. It recommended he be sentenced to the high base term and committed to state prison based on these aggravating circumstances: (1) The crime was carried out with "planning sophistication, or professionalism"; (2) he engaged in "violent conduct" reflecting "a serious danger to society"; (3) his prior convictions were "numerous or of increasing seriousness"; (4) he "served a prior prison term"; (5) he was "on probation or parole when the crime was committed"; and (6) his "prior performance on probation or parole was unsatisfactory." The report identified no mitigating factors.

According to the court-ordered assessment prepared pursuant to section 1368, appellant has a history of mental illness and has received treatment for Schizoaffective Disorder, a condition that interferes with his ability to remain employed. The report also reflected that appellant has been diagnosed with Malingering (exaggerating his symptoms of mental illness to avoid prosecution), Antisocial Personality Disorder and has a

6

significant history of drug abuse. He is a member of the Crips gang, and associated with a fellow gang member while at the hospital. While hospitalized, appellant exhibited a pattern of disregarding others' rights, disrespect for authority and a propensity to lie. The report characterized appellant as a "very manipulative" person with a "charming personality." He was "caught strong arming the weaker patients on the unit" several times, and "developed a pattern of exaggerating symptoms of mental illness to avoid being held accountable for his behavior." For example, during a physical altercation, appellant used a makeshift shank he had made to stab someone. When counseled about the incident, he expressed no remorse for his conduct and acted as if he were experiencing hallucinations. Thereafter, appellant's symptoms of mental illness improved with medication, and no longer impaired his ability to be competent to stand trial.

Recognizing it had the discretion to grant the *Romero* motion, the trial court denied it. The court found that appellant previously had committed multiple similar offenses, and his prior petty theft convictions could have escalated into aggravated crimes similar to the instant offense. The court acknowledged that appellant suffered from mental health problems. However, it observed he had been deemed competent to stand trial and found he posed a true and continuing threat to the community, in light of his multiple victims and offenses and prior convictions of a similar type.

2. *Denial of appellant's request to strike a strike*

A trial court's decision to strike a prior strike is limited to those instances "in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at p. 530; § 1385, subd. (a).) There are "stringent standards that sentencing courts must follow" to dismiss a strike conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17

Cal.4th 148, 161 (*Williams*); accord, *Carmony*, at p. 377.) The Three Strikes law "establishes a sentencing norm, . . . circumscribes the trial court's power to depart from [that] norm and requires the court to explicitly justify its decision to do so." By doing so, "the law creates a strong presumption that any sentence that conforms to these sentencing norms" is appropriate. (*Carmony*, at p. 378.) A trial court should not dismiss a career criminal's strike conviction unless the circumstances are "'extraordinary.'" (*Ibid*.)

We will reverse a trial court's refusal to strike a strike only if appellant can show the sentencing decision was so irrational or arbitrary that no reasonable person could agree with it. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) The trial court is required to state its reasons for granting a *Romero* motion and dismissing a strike conviction. (*Id*. at p. 376; § 1385, subd. (a).) It is not, however, required to state its reasons refusing to strike a strike. This difference "reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law." (*Carmony*, at p. 376.) Our review is "guided by two fundamental precepts." (*Ibid*.) "First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citation.]" (*Id*. at pp. 376–377.) "Second, a "'decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"" [Citation.]" (*Id*. at p. 377.)

Here, the circumstances evaluated by the trial court led to its conclusion that appellant did not fall outside the letter or spirit of the three strikes sentencing scheme. The record does not show that the court based its decision on any improper factors or that it failed properly to consider the *Williams*, *supra*, 17 Cal.4th 148 factors. In short, we see no "extraordinary" circumstances and, absent such circumstances, cannot say the court abused its discretion by refusing to strike a strike. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Appellant asserts the court erred in denying his motion because his 1993 conviction was remote. The fact that the prior strike occurred 20 years before the current conviction is of little relevance. Appellant cites no authority for the proposition that the age of a strike alone requires the court to depart from the three strike sentencing scheme, and we are aware of none. The mere fact that a strike is remote in time is insufficient to grant a *Romero* motion without consideration of other factors, including but not limited to the subsequent commission of nonstrike crimes. (See, e.g., *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [observing that "a prior conviction may be stricken if it is remote in time," but that "[i]n determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on"].)

Here, the circumstances evaluated by the trial court—including the specifics of the current offenses, the nature of the prior strike offense and the evidence of appellant's criminal record—led to its conclusion that appellant did not fall outside the letter or spirit of the Three Strikes sentencing scheme. Nothing indicates that the court's ruling was not impartial or that it considered any improper factors. (See *People v. Philpot* (2004) 122 Cal.App.4th 893, 906.) Appellant's disagreement with the court's view of his criminal history or the nature and gravity of his offenses does not render its ruling arbitrary or irrational. At best, appellant has shown reasonable people could disagree on whether to strike his prior conviction. But, an appellant does not carry his significant burden on appeal merely by showing reasonable people might disagree on this point. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

This case does not present an extraordinary circumstance and does not warrant a finding that appellant should be "'deemed to fall outside the spirit of the very [Three Strikes] scheme within which he squarely falls . . . .'" (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Absent such extraordinary circumstances, we cannot say that the trial court abused its discretion by refusing to strike appellant's prior strike.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.